UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID FERRER LESCAILLE,

       Petitioner,

    v.

KELIE WALKER, SECRETARY
KRISTI NOEM, PAMELA BONDI,
TODD LYONS,  WARDEN OF
FLORIDA SOFT SIDE SOUTH
FACILITY,

       Respondents.

Case No. 2:26-cv-11-KCD-NPM

_____/

## **ORDER**

Petitioner David Ferrer Lescaille is a Cuban national who arrived in the United States in 1980. After racking up criminal convictions, an immigration judge ordered his removal in 2013. (Doc. 1 ¶ 22.) Because Lescaille is a Cuban national—making his actual deportation unlikely at the time—ICE could not immediately effectuate his return. So the Government released him on an order of supervision, which is essentially a form of immigration parole. Then, on November 12, 2025, ICE arrested him, revoked his release, and put him behind bars. He has been detained ever since.

ICE has served Lescaille with a notice that it intends to remove him to Mexico. (Doc. 19-1 at 1.) A deportation officer's declaration states that Lescaille is scheduled to be deported by bus to the Santa Teresa Port of Entry

in New Mexico. (Doc. 19-1 ¶ 10.) Yet there is no indication from Respondents that the removal has occurred.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The Government first claims that two provisions of the INA—8 U.S.C. §§ 1252(g) and (b)(9)—preclude federal jurisdiction. We have already addressed these arguments and rejected them for the same reasons they fail today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026). The Court thus turns to the merits.

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90

days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678, 699 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Lescaille satisfies the initial temporal requirement. ICE took him into custody on November 12, 2025. Because the six-month period

for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Lescaille has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He states that he has received no indication that ICE will remove him. (Doc. 1 at 9-10.) Those facts are enough here, considering ICE has been unable to remove Lescaille for several decades.

The burden thus shifts to the Government to rebut Lescaille's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Lescaille will be removed in the near future. (Doc. 12.) Instead, the Government offers a declaration from Paul Castro, a deportation officer, that simply lays out the removal procedures that will be followed to effect the removal to Mexico. (Doc. 19-1.) But there is no indication that Mexico will accept Lescaille's upcoming removal, and, if accepted, it will proceed. Because ICE offers no concrete evidence that removal is likely in the near future, Lescaille must be released.

It is easy to see why this outcome might cause unease. Lescaille is a convicted criminal. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for decades without facing the ultimate immigration consequence. But this Court is

bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Lescaille will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his Order of Supervision. To the extent Lescaille raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner David Ferrer Lescaille from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

Respondents shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on May 26, 2026.

Kyle C. Dudek
United States District Judge